IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

John C. Berkery,
        Plaintiff    : Civil Action No.09- 09-CV-2075-GP

v.

Certegy, Inc.; First National
Financial, Inc.; Fidelity Nat-   : **JURY DEMAND**
ional Information Services,
Inc., Bennett, DeLoney, & Noyes,
P.C.; Michael Bennett, Esq.;
Ronald J. Noyes, Esq.; Richard
H. DeLoney, Esq.; AAA Collect-
Ions, Inc.,
        Defendants

FILED
JUL 2 8 2009
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## AMENDED CIVIL VERIFIED COMPLAINT
## IN EQUITY AND AT LAW WITH JURY DEMAND

The Plaintiff in this matter, John C. Berkery, Sr., hereby amends his former Montgomery County, PA Complaint ( *infra* )( which has been removed to this Court on motion of the defendants ) to be more in compliance with the rules of this Court. In doing so, Plaintiff files this Amended Complaint as a one-time matter of course and relies upon Federal Rule of Civil Procedure 15(a) and 28 U.S.C. §1653.

I. **JURISDICTION**

Jurisdiction confers upon this Court since this case complies with both 28 U.S.C. §1331 and 28 U.S.C. §1332 (a)(1).

## II. VENUE

Venue in this matter issues under 28 U.S.C. §1391(b)(2), in that the Eastern District of Pennsylvania was the locale where " a substantial part of the events or omissions giving rise to the claim occurred".

## III. STATUTES INVOKED

1. This is an action under the **Fair Debt Collection Practices Act**, hereinafter "FDCPA," 15 U.S.C. §1692a, et seq, the **Fair Credit Reporting Act**, herinafter "FCRA", 15 U.S.C. §1681 et seq.. Also alleged under pendent jurisdiction are: violations of the Pennsylvania **Fair Credit Extension Uniformity Act**, hereinafter "FCEUA", 73 P.S. § 2270, et seq.; **Common Law Libel**, and **Civil Conspiracy**.

2. Jurisdiction under the FDCPA and the FCRA is founded, respectively, upon 15 U.S.C. 1692k and 15 U.S.C. § 1681p which grant this Court authority to hear this action without regard to the amount in controversy. Plaintiff, under 28 U.S.C. §1367(a), also invokes pendent (supplemental) jurisdiction on any non-Federal claims.

## IV. PARTIES

3. The plaintiff, an individual, is a resident of Montgomery County, PA.

4. Defendant Certegy, Inc. is a corporation whose principal place of business is located at 11601 Roosevelt

Blvd., St. Petersburg, FL 33716 and is a wholly-owned subsidiary of Fidelity National Information Services, Inc.

5. Defendant Fidelity National Information Services, Inc. (FIS) is a corporation whose normal and ordinary place of business is 601 Riverside Avenue, Jacksonville, FL. 32204 and is a subsidiary of Fidelity National Financial, Inc. (FNF).

6. Defendant Fidelity National Financial, Inc. (FNF) is a corporation whose normal and ordinary place of business is 601 Riverside Avenue, Jacksonville, FL 32204.

7. Defendant Bennett, DeLoney, and Noyes, P.C. ( BDL ) is a Florida professional corporation whose principal place of business is located at 1265 E. Fort Union Blvd., Cottonwood Heights, UT 84047.

8. Defendants Michael B. Bennett, Esq. Richard H. DeLoney, Esq., and Ronald J. Noyes, Esq. are attorneys and principals in BDL professional corporation whose normal and ordinary place of business is 1265 E. Fort Union Blvd., Cottonwood Heights, UT 84047.

9. Defendant AAA Collections, Inc., is a corporation whose normal and ordinary place of business is 2950 N. Academy Blvd., Colorado Springs, CO 80917.

10. All defendants are debt collectors as defined by the

FDCPA, 15 U.S.C. §1692a(6).

11. The plaintiff is a "consumer" as defined 15 U.S.C. §1692a(3).

NOTE: Any allegations herein against the defendant Certegy, Inc. is also against the defendants Fidelity National Financial, Inc. (FNF), and Fidelity National Information Services, Inc. (FIS) under the theory of *respondeat superior*.

V.     **FACTS ALLEGATIONS**

12. In March, 2007, Plaintiff had a cell phone account with Cingular Wireless under the telephone number 215-380-1939.

13. Plaintiff, in paying his bill for March, 2007, had his check returned by Bank of America.

14. Immediately upon learning that the check was returned, Plaintiff sent Cingular Wireless a replacement check, paying his account in full and up to date. ( Exhibit "A" ).

15. During this same time period, Plaintiff was informed

4

by Bank of America that a check for $25 had been presented on Plaintiff's account in favor of Certegy, Inc.; plaintiff informed the bank that he had never issued or authorized such a charge and had the charge reversed.

16. In the course of his investigation of this bad check by Certegy, Inc., Plaintiff came to find out that during the short period between plaintiff's first check to Cingular Wireless and his replacement check ( paying the charge in full ), Cingular had allegedly contacted Certegy, Inc., and that Certegy, Inc., with whom Plaintiff had never had any business whatsoever or even heard of, was now claiming a fee of $25. Plaintiff told Certegy that they were lucky he wasn't seeking criminal prosecution for their attempts to run a false check though his account, and refused to pay them any fee whatsoever.

17. In the months of 2007 following March, Plaintiff presented valid checks in payment for services at various locations only to be told the checks were "declined" by Certegy. Upon calling Certegy plaintiff was informed that the check was declined not because there weren't funds in the account to cover it, but rather because plaintiff wouldn't submit to the $25 extortion attempt described above.

18. By December, 2007, plaintiff was being contacted with

threatening phone calls from defendant BDL demanding payment for the above March, 2007 phone bill which had already been long since paid directly to the merchant, Cingular Wireless. When plaintiff demanded copies of the phone bill in question, BDL's bill collectors refused to provide them and instead spoke to plaintiff in a rude, threatening manner.

19. This caused plaintiff to write directly on December 6, 2007, to defendant Michael B. Bennett, Esq., one of BDL's owners. In the first letter, Plaintiff had gone to the trouble of getting copies of the paid bill from Cingular Wireless and had had sent the paid copies to Bennett along with the letter explaining the whole situation and requesting, *inter alia,* "an explanation and/or apology". There was no reply from either Bennett, or BDL to the above correspondence. ( Exhibit "B" ).

20. Throughout the following year, Plaintiff was "declined" when presenting good checks to WalMart, AT&T, Lowe's, Just Tires, and others, supposedly by defendant Certegy, causing him to contact Certegy directly. An exchange of e-mails ( Exhibit "C" ) beginning on May 23, 2008, ensued with one Amanda Van Ostrand, a Certegy "Customer Care" employee. In this exchange, Van Ostrand remains noncommittal about the

bill having been paid directly to the merchant and blames Certegy's decline of the checks on BDL, saying "We have some negative information being reported to us from a company called Bennett and DeLoney", giving plaintiff BDL's phone number, and "Since this check is no longer with Certegy, we are not attempting to collect anything. You have to contact the law firm in order to clear this up". Van Ostrand neglects to mention that any information in the possession of BDL was supplied to them by none other than Certegy!!

21. The exchange with Van Ostrand occasioned a second letter by Plaintiff to Michael Bennett, Esq. of BDL with copies to defendants DeLoney and Noyes. In this second letter, plaintiff again went through the litany of offenses by both Certegy and BDL and again asked that the record be corrected. This letter was also ignored and no reply was made to it. ( Exhibit "D" ).

22. The blatant conduct by these three attorneys is just cause for the court to pierce BDL's corporate veil in this matter, in order to get to the real perpetrators. Hence, their inclusion personally as defendants.

23. By January 2, 2009, the false debt, not the alleged $25 charge, was being reported on plaintiff's credit report by Equifax, a Credit Reporting Agency( CRA ), and possibly

Trans Unionand Experian, **as having come directly from Certegy** and reads, "Certegy-Cingular-480-23810-Returned Check, Charged-off Account"-3/07-$196" and that it is "90-plus days in arrears." The false posting has continued throughout the year 2009 and remains as of the filing of this Complaint ( "Exhibit E" ).

24. At the same time of the events at #23 above, (11/23/08) Certegy enlisted the services of the defendant AAA Collections, Inc. ( AAA ) by either selling them the false "account" or hiring them to collect it. AAA gave it an account number of 10991676. AAA, in turn, enlisted the services of a debt-collection attorney in New City, NY, one Bradley Riphen, on June 17, 2009. Both Riphen and AAA have made threatening phone calls to plaintiff violative of the FDCPA, *inter alia,* although they have been made aware of the true circumstances of the alleged "debt".

25. Defendants are not admitted to practice law in Pennsylvania, and therefore never intended to bring litigation in the Commonwealth. Hence, they were not entitled to suggest or recommend that such an action should be brought. ( 26., 27.: DELETED ).

28. The plaintiff has been terrorized, traumatized and humiliated by the defendants' false posting to credit reporting agencies, declined checks, phone callse ( most recently from Certegy at 800-780-4838 at mid-day on April 13, 2009 demanding "fifty dollars" ), and threatening letters.

29. Plaintiff has been defamed and held up to hatred,

7

contempt, and ridicule both in the community and to potential creditors and has been denied credit due to these false postings.

30. Plaintiff's family life and household peace have been severely disrupted and thrown into chaos because of the defendants' reckless actions.

### First Claim for Relief:
### Violation of the Fair Debt Collection Practices Act

31. Plaintiff repeats and incorporates by reference the foregoing paragraphs.

32 The defendants violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to falsely defame plaintiff on credit reports.

33 The defendants violated 15 U.S.C. § 1692d by causing plaintiffs' telephone to ring and engaging plaintiff in telephone conversations repeatedly or continuously with intent to annoy, abuse, or harass him.

34. The defendants violated 15 U.S.C. § 1692e(5) by threatening suit; by recommending suit; by threatening to have the sheriff serve legal process upon plaintiff, none of which could be legally accomplished by defendant since he was not licensed to practice law in Pennsylvania nor to bring such a case there.

35. The defendants further violated 15 U.S.C. § 1692e(5)

since they had no intention of bringing such legal action against plaintiff.

36. The defendants violated 15 U.S.C. § 1692c(c) by refusing to cease communications with plaintiff by telephoning him repeatedly.

37. The defendants violated 15 USC §1692g by demanding full payment in their letters of December, 2008 "because you have had ample time to pay your creditor" during the debt validation period in a manner that overshadowed the notice of validation rights and would create confusion for a least sophisticated consumer about his rights.

38. The defendants violated 15 USC §1692e(10) by using false representation or deceptive means to collect or attempt to collect any debt in an attempt to embarrass and humiliate plaintiff into paying defendant money that plaintiff had already paid and was not legally responsible for.

39. The defendants violated 15 USC §1692d(5) by calling plaintiff back within 1 minute after a prior call, in a attempt to further harass and intimidate plaintiff.

40. Any or all of the foregoing actions of defendants would have been more than sufficient to overcome the will of the least sophisticated consumer to resist such tactics.

41. As a result of defendants' action, plaintiff was

terrorized, traumatized, embarrassed and humiliated in his dealings with various people and firms, diminished in the eyes of anyone who became aware of the defendants' false allegations; was held up to ridicule, contempt, and hatred in the eyes of the community; was impeded from getting further credit and/or conducting normal business; suffered loss of sleep, felt physically sickened, nausea, intense stress and emotional distress, interfering with his ability to care for his family as well as inability to concentrate on his business affairs, and loss of the enjoyment of his life.

42. As a result of the actions of defendants, plaintiff, a certified paralegal, has been forced to devote many hours in prosecution of this action which time could ordinarily have been devoted to practicing his profession. Plaintiff values his time at a minimum of $100 per hour.

43. The defendants violated 15 U.S.C. §1692f in that their actions were an unfair and/or unconscionable means to collect a non-existent debt for the reasons set forth in the paragraphs immediately preceding.

44. As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for declaratory judgment that defendant's conduct violated the FDCPA, and

Plaintiff's actual damages, statutory damages, punitive damages, and costs and attorney's fees including his own paralegal fee.

### Second Claim for Relief:
### Violation of the Fair Credit Reporting Act

45. Plaintiff repeats and realleges and incorporates by reference the foregoing paragraphs.

46. Defendants' actions in posting false allegations of a debt attributed to Plaintiff with credit reporting agencies have violated the **Fair Credit Reporting Act.**

47. Defendants have violated section § 616 of the FCRA by willfully failing to comply with its provisions . [15 U.S.C. § 1681n].

48. Defendants have negligently violated Section § 617 of the FCRA by negligently failing to comply with its provisions.[15 U.S.C. § 1681o]

49. In reporting to credit reporting agencies information that defendants knew was false, defendants are in violation of the following sections of the FCRA:

§ 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]

(a) Duty of Furnishers of Information to Provide Accurate Information.

(1) Prohibition

(A) *Reporting information with actual knowledge of errors.* A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) *Reporting information after notice and confirmation of errors.* A person shall not furnish information relating to a consumer to any consumer reporting agency if

    (i)    the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

    (ii)   the information is, in fact, inaccurate.

50. As a result of the above violations of the FCRA, the Defendant is liable to the Plaintiff for declaratory judgment that defendant's conduct violated the FCRA, and Plaintiff's actual damages, statutory damages, punitive damages, and costs and attorney's fees including his own paralegal fee.

**Third Claim for Relief:**
**Violation of the Pennsylvania Fair Credit Extension Uniformity Act**

51. Plaintiff repeats and realleges and incorporates by reference the foregoing paragraphs.

52. Defendants violated the Pennsylvania **Fair Credit Extension Uniformity Act** 73 P.S. § 2270 et seq (the "FCEUA").

53. Defendants' violations of the FCEUA include, but are not limited to, the following:

a. The Defendants violated 73 P.S. §§ 2270.4(a) by violating the Fair Debt Collection Practices Act (FDCPA)(Public Law 95-109, 15 U.S.C. § 1692 et Seq.) and the Fair Credit Reporting Act( FCRA ) ( Public Law No. 91-508, October 26, 1970), 15 U.S.C. § 1681 et seq.

b. Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged false debt.

54. As a result of the above violations of the FCUEUA, the Defendants are liable to the Plaintiff for actual damages, statutory damages, and attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully prays that judgment in a sum less than $150,000 be entered against the Defendants, both jointly and severally, for the following:

1. Actual damages;
2. Statutory damages including punitive damages pursuant to 15 U.S.C. § 1692k.
3. Statutory damages including punitive damages pursuant to 15 U.S.C. § 1681n & 1681o.
4. Statutory damages pursuant to 73 P.S. § 2270.5.
5. Costs and reasonable attorney's fees and/or including

paralegal fees pursuant to 15 U.S.C. § 1692k, 15 U.S.C. § 1681o(a)(2), (b), and 73 P.S. §2270.5.

6. For such other and further relief as may be just and proper.

**Fourth Claim for Relief:**
**Common Law Libel.**

55. Plaintiff repeats and realleges and incorporates by reference the foregoing paragraphs.

56. Defendants, both jointly and severally, through false and misleading statements and allegations about the plaintiff to credit reporting agencies as outlined above, have libeled plaintiff to the general public, defaming him in accordance with the Restatement (Second) of Torts §571, accusing him of owing debts which the defendants knew or should have known, had been paid directly to Cingular Wireless.

57. Said libelous postings were completely the fault of all defendants, and each of them, and were made and published to third parties, with actual malice as such statements were made by defendants with reckless disregard for their falsity, and damaged the plaintiff.

58. As a proximate result of all defendants' publication of the false and defamatory statements, plaintiff has been denied credit on numerous occasions, been declined when

paying bills with personal checks which were good checks, been embarrassed, and suffered injury to his personal and professional reputation in an amount to be determined at trial.

59. The actions of defendants in knowingly, falsely, and maliciously publishing said information to credit reporting agencies caused plaintiff to be held up to ridicule, hatred, contempt, and scorn in the eyes of such people as he was contemplating doing business with.

60. Because the conduct of all defendants, and each of them, in publishing the false and defamatory statements was undertaken knowingly, willfully, maliciously and in conscious disregard of plaintiff's rights, plaintiff John C. Berkery is entitled to an award of punitive damages, in an amount to be determined at trial, and such other and further relief as this Court may deem just and proper.

### Fifth Claim for Relief:
### Civil Conspiracy

61. Plaintiff repeats and realleges and incorporates by reference the foregoing paragraphs.

62. All of the defendants conspired with at least one other person.

63. The conspirators were possessed of a real agreement or confederation with a common design.

64. At least one of the conspirators committed at least one overt act in furtherance of the conspiracy.

65. The acts of the conspirators were done with an unlawful purpose or with a lawful purpose to be achieved by unlawful means.

66. The end result of the conspiracy was to cause the plaintiff damage.

67. Because the conduct of all defendants, and each of them, in publishing the false and defamatory statements was undertaken knowingly, willfully, maliciously and in conscious disregard of plaintiff's rights, plaintiff John C. Berkery is entitled to an award of punitive damages, in an amount to be determined at trial, and such other and further relief as this Court may deem just and proper.

### Sixth Claim for Relief:
### Aiding & Abetting

68. Plaintiff repeats and realleges and incorporates by reference the foregoing paragraphs.

69. All of the defendant, singularly, together, and in tandem, committed at least one wrongful act against the plaintiff.

70. In committing such act or acts, the defendants aided and abetted each other.

71. In aiding and abetting each other, the defendants did

so with full knowledge that the act or acts were wrong.

72. All of he aider-abettors knowingly and substantially participated in the wrongdoing.

73. Because the conduct of all defendants, and each of them, in publishing the false and defamatory statements was undertaken knowingly, willfully, maliciously and in conscious disregard of plaintiff's rights, plaintiff John C. Berkery is entitled to an award of punitive damages, in an amount to be determined at trial, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*John C Berkery*
John C. Berkery, Sr.
Plaintiff Pro Se IFP
P.O. Box 76
Flourtown, PA 19031-0076
(215) 380-1939
www.seanmacsean@yahoo.com

## VERIFICATION OF COMPLAINT

I, John C. Berkery, Sr., a citizen of the United States and resident of Montgomery County, Pennsylvania, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Date: July 27, 2009.

*/s/ John C. Berkery*
John C. Berkery, Sr.

Sworn to and subscribed before me this the 27th day of July, 2009.

*/s/ Nicholas A. Salamone*
NOTARY PUBLIC

My commission expires:

```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
NICHOLAS A. SALAMONE, Notary Public
  Plymouth Twp., Montgomery County
  My Commission Expires July 12, 2010
```

## JURY DEMAND

**A JURY TRIAL IS DEMANDED** under F.R.Civ.P. 38(a),(b)(1).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this Amended Complaint has been served by me via first-class mail, on this 27th day of July, 2009, upon the following defendants who had already received original service on April 17, 2009:

Certegy, Inc.,
11601 Roosevelt Blvd., St. Petersburg, FL 33716
Fidelity National Information Services, Inc.
Fidelity National Financial, Inc.
601 Riverside Ave., Jacksonville, Fl 32204
all c/o Joann Needleman, Esq., MAURICE & NEEDLEMAN P.C.
935 One Penn Center, 1617 JFK Blvd., Phila., PA 19103

Bennett, DeLoney, & Noyes, P.C.
Michael B. Bennett, Esq., Richard H. DeLoney, Esq.,
Ronald J. Noyes, Esq.
1265 E. Fort Union Blvd.
Cottonwood Heights, UT 84047,

and that original service was made via first-class mail by me on the 27th day of July, 2009, upon:

AAA Collections, Inc.,
2950 N. Academy Blvd., Colorado Springs, CO 80917

*John C Berkery*
John C. Berkery, Sr., Plaintiff
Pro Se